IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DONALD P. KENNEDY,

        Plaintiff,

v.

EQUITY TRANSPORTATION CO., INC.,

        Defendant.

Civil Action No.
1:14-CV-0864 (DEP)

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF: | |
| COOPER ERVING & SAVAGE LLP<br>39 North Pearl Street, Fourth Floor<br>Albany, NY 12207 | CARLO A.C. de OLIVEIRA, ESQ. |
| FOR DEFENDANT: | |
| GIBSON, McASKILL & CROSBY LLP<br>69 Delaware Street, Suite 900<br>Buffalo, NY 14202 | ROBERT E. SCOTT, ESQ.<br>ROCHELLE K. LAWLESS, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiff Donald P. Kennedy, a truck driver formerly employed by defendant Equity Transportation Company, Inc. ("Equity"), has commenced this action alleging that Equity failed to properly compensate him as required under both the Fair Labor Standards Act ("FLSA") of 1938,

29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL") § 650 *et seq.*, by violating the overtime requirements of those provisions. In response to plaintiff's claims, Equity contends that it is exempt from those overtime requirements based on the authority vested in the Secretary of Transportation to establish qualifications and maximum hours of service for truck drivers pursuant to the Motor Carrier Act of 1935 ("MCA"), 49 U.S.C. § 31502, legislation that predated the enactment of the FLSA by three years.

Now that discovery in the action is complete, the parties have filed cross-motions for summary judgment, each arguing that there are no genuine disputes of material fact requiring a trial and that they are entitled to judgment as a matter of law. For the reasons set forth below, defendant's motion will be granted and plaintiff's denied.[1]

I.   BACKGROUND

Equity is a national trucking company operating as an interstate contract carrier throughout the United States. Dkt. No. 22-15 at 2. On January 16, 2009, New Bern Transportation Corporation ("New Bern"), the principal contracting entity for the transportation of Pepsi Beverages Company ("Pepsi") goods throughout the United States, entered into a

---

[1] This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 363(c). Dkt. No. 20.

Transportation of Goods Agreement ("Agreement") with Equity. Dkt. No. 21-6 at 85, 128-142. The Agreement provides, *inter alia*, that Equity will transport Pepsi commodities from Pepsi's facility in Latham, New York ("Latham facility"), to company-owned or operated satellite warehouses both within and outside of New York State. *Id.* at 85. None of the Pepsi goods transported under the Agreement are specifically designated to fill orders for particular customers. *Id.* at 86. Instead, the purpose of the shipments is to allow Pepsi to maintain approximately ten-to-twelve days worth of inventory in its satellite warehouses to fill customer orders when they are received. *Id.*

The goods transported under the Agreement can include (1) empty can bodies and ends manufactured in New York and transported to the Latham facility for the production of filled goods intended for retail sale; (2) full goods, including, but not limited to, Starbuck's Frappuccino, O.N.E. Coconut Water, Muscle Milk, Ocean Spray, Rockstar, Gatorade, SoBe, Fruit Shoots, and Lipton Pure Leaf beverages manufactured at various third-party co-packaging locations throughout the United States and delivered by third-party carriers to the Latham facility for transport to warehouses located within and outside of New York State; and (3) other full goods, including, though not limited to, Pepsi-brand products manufactured at the Latham facility, to be transported to warehouses

3

owned or operated by Pepsi located both within and outside of New York. Dkt. No. 21-6 at 85-86. Under the Agreement, Equity drivers deliver those goods to Pepsi satellite locations located throughout New York State, as well as in New Jersey, Pennsylvania, and Connecticut. Dkt. No. 22-5 at 83-84; Dkt. No. 22-6 at 20, 30-32.

 To fulfill its obligations under the Agreement, Equity utilizes one "shuttle driver" and nine "over-the-road drivers." Dkt. No. 21-2 at 33; Dkt. No. 21-6 at 34. The shuttle driver's primary responsibility is to transport single trailers filled with products from the Latham facility to a compound at Exit 24 on the New York State Thruway (the "Exit 24 compound"), located approximately nine miles away, and to return empty trailers from the compound to the facility. Dkt. No. 1 at 3; Dkt. No. 8 at 1; Dkt. No. 21-6 at 59-60. The shuttle driver is also occasionally required to transport single trailers containing products to satellite warehouses in New York, and to transport empty cans manufactured in New York to the Latham facility. Dkt. No. 21-5 at 77, 107-08; Dkt. No. 21-6 at 19. The primary job of over-the-road drivers is to deliver trailers filled with products from the Exit 24 compound to satellite Pepsi warehouses located in New York, New Jersey, Pennsylvania, and New England. Dkt. No. 21-6 at 33. The shuttle driver is paid an hourly rate for his primary job of shuttling, while over-the-road drivers are compensated based upon mileage rates that differ

4

depending on the number of trailers they are transporting. Dkt. No. 21-5 at 75-76; Dkt. No. 21-6 at 34-35.

The daily schedules and routes for Equity drivers are assigned by Linda Wilbur, who is the company's Northeast Dedicated Account Manager and the immediate supervisor of all truck drivers hired by Equity to transport commodities under the Agreement. Dkt. No. 22-6 at 18-19, 29. According to Wilbur, the dispatch of trucks is based on production, and "[n]one of the day drivers ha[ve] the same trip every single day." Dkt. No. 21-6 at 29. At her deposition, she testified that every driver is expected and required to make trips outside of New York State, and a majority of the drivers make trips to New Jersey or Pennsylvania. *Id.* at 32-33.

The typical protocol for transporting goods by Equity involves two drivers, an over-the-road driver and a shuttle driver, separately leaving the Latham facility, each with a single trailer filled with Pepsi goods.[2] Dkt. No. 21-6 at 35-37. The shuttle driver is provided with a bill of lading for each trailer scheduled to be transported from the Latham facility to the Exit 24 compound. Dkt. No. 22-5 at 54-56, 81-82. After arriving at the Exit 24 compound, the shuttle driver disconnects his trailer and places the bill of lading for that load in a small mailbox located in the front of the trailer. *Id.* at 82. An over-the-road driver, with one trailer already attached, then

---

[2] While double trailers are permitted on the New York State Thruway, they are prohibited on local roads. Dkt. No. 21-6 at 35.

arrives at the Exit 24 compound, engages a second trailer to his vehicle, and drives the two in tandem to the satellite warehouse located at the destination set forth on the bill of lading. Dkt. No. 21-5 at 73-75; Dkt. No. 22-6 at 35. In addition to transporting trailers filled with product from the Latham facility to the Exit 24 compound, the shuttle driver is also tasked with returning empty trailers from the compound to the facility. Dkt. No. 21-5 at 74; Dkt. No. 22-6 at 36-37.

Plaintiff was hired as a shuttle driver for Equity in February 2011, and worked for the company until June 2014. Dkt. No. 1 at 3; Dkt. No. 8 at 1. During the relevant time period, he was the only shuttle driver employed by Equity. Dkt. No. 21-6 at 34. In his position, each day plaintiff transported trailers between the Latham facility and the Exit 24 compound until all of the full trailers were delivered or he reached a fourteen-hour workday. Dkt. No. 21-5 at 74; Dkt. No. 21-6 at 41. When plaintiff dropped off trailers for over-the-road drivers at the Exit 24 compound, he knew the specific satellite warehouses to which the trailers were destined in New York, Pennsylvania, New Jersey, or New England. Dkt. No. 21-5 at 87-88.

Occasionally, plaintiff was also required to transport single trailers to satellite warehouses located within New York State, including in Saratoga

Springs and Feura Bush.[3] Dkt. No. 21-6 at 107-09; Dkt. No. 22-8 at 8-9. Although plaintiff was required to obtain his tandem (double trailer) license certification as a condition of his employment with Equity, he drove a tandem trailer only once during his employment. Dkt. No. 22-8 at 9. In addition, while Wilbur testified at her deposition that plaintiff drove to New Jersey twice, plaintiff denies this claim, and the payroll records show no evidence of these trips.[4] Dkt. No. 21-2 at 5; Dkt. No. 21-3; Dkt. No. 21-4; Dkt. No. 21-5 at 88; Dkt. No. 21-6 at 46. Plaintiff's payroll records show that he worked 4,043.50 hours of overtime during his employment. Dkt. No. 21-6 at 90. Plaintiff was not paid time-and-a-half for those overtime hours. Dkt. No. 21-6 at 68, 90; Dkt. No. 21-7 at 3.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 17, 2014. Dkt. No. 1. On June 23, 2015, following the completion of discovery, plaintiff filed a motion for summary judgment, arguing that no reasonable factfinder could conclude that Equity did not violate the overtime provisions of the FLSA based upon the facts, which are largely uncontroverted. Dkt. No. 21-8.

---

[3]   The parties agree that plaintiff delivered single trailers to satellite warehouses other than the Exit 24 compound but disagree as to the frequency of those trips. Dkt. No. 21-9 at 5; Dkt. No. 22-9 at 3-5. While plaintiff contends that during his three-year employment with Equity, he was only asked to transport single trailers to satellite warehouses eight times, defendant disputes the exact number. *Id.*

[4]   In response to plaintiff's first set of interrogatories, Equity stated that it could not "truthfully admit or deny" whether plaintiff ever "drove outside New York State in the course of his employment with [Equity]." Dkt. No. 22-9 at 5.

Equity responded by filing papers in opposition to plaintiff's motion and in support of a cross-motion for summary judgment in its favor dismissing plaintiff's complaint, contending that the FLSA's overtime provisions do not apply to plaintiff's position.[5] Dkt. Nos. 22-18. With the filing of a plaintiff's reply on July 27, 2015, Dkt. No. 25, the matter is now ripe for determination. Oral argument in connection with the parties' cross-motions was conducted on August 12, 2015, at which time decision was reserved.

III.   DISCUSSION

    A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as

---

[5] In support of his summary judgment motion, plaintiff filed a statement of undisputed material facts pursuant to rule 7.1(a)(3) of the local rules of practice for this court. Dkt. No. 21-9. In opposition to plaintiff's motion and in support of its cross-motion for summary judgment, defendant filed a responsive statement of undisputed material facts and adding additional assertions of undisputed material facts. Dkt. No. 23. Although he filed a reply in further support of his motion for summary judgment, plaintiff did not respond to the additional assertions of fact included in defendant's statement. Dkt. No. 25. Ordinarily, in accordance with rule 7.1(a)(3) the court would "<u>deem admitted any properly supported facts set forth in the Statement of Material Facts that the [plaintiff] does not specifically controvert.</u>" N.Y.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Notwithstanding this rule, however, rule 7.1(c), which governs the filing of cross-motions, is arguably ambiguous as to whether such a response is required. *See* N.D.N.Y. L.R. 7.1(c) (permitting, but not requiring, the original moving party to file a reply "with a reply/opposition brief," but not specifying that the reply should or must include a responsive statement of undisputed material facts). In light of the ambiguity in the local rules, the court has not penalized plaintiff for failing to respond to defendant's additional statement of undisputed material facts, and instead has canvassed the record to determine whether any dispute of material fact exists.

a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of

summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

In a case such as this, where parties have interposed cross-motions for summary judgment, each motion must be independently assessed, applying the foregoing standard as a backdrop. *See Light Sources, Inc. v. Cosmedico Light, Inc.*, 360 F. Supp. 2d 432, 434 (D. Conn. 2005).

B.  Fair Labor Standards Act and the Motor Carrier Exemption

By its enactment of the FLSA in 1938, Congress sought to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a); *see Williams v. Tri-State Biodiesel, L.L.C.*, No. 13-CV-5041, 2015 WL 305362, at *4 (S.D.N.Y. Jan. 23, 2015); *Masson v. Ecolab, Inc.*, No. 04-CV-4488, 2005 WL 2000133, at *4 (S.D.N.Y. Aug. 17, 2005). One of its provisions requires employers to pay an employee one-and-one-half times his regular pay rate for work in

10

excess of forty hours per week.[6] 29 U.S.C. § 207(a)(1); *Williams*, 2015 WL 305362, at *4. This mandate, however, is subject to certain exemptions, which, in light of the strong considerations upon which the FLSA is predicated, "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirits." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *accord, Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015). An employer bears the burden of proving that an FLSA exemption applies. *Arnold*, 361 U.S. at 394 n.11; *accord, Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

One of the applicable exemptions is commonly referred to as the "motor carrier exemption." 29 U.S.C. § 213(b)(1); *Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y. LLC*, 865 F. Supp. 2d 257, 263-64. The relevant FLSA provision governing the exemption provides, in pertinent part, that

---

[6] The overtime requirements of the FLSA are generally mirrored in the corresponding provisions of the NYLL. *See Reiseck v. Univ. Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA."); *Guadalupe v. Tri-State Emp't,Mgmt. & Consulting, Inc.*, No. 10-CV-3840, 2013 WL 4547242, at *7 (E.D.N.Y. Aug. 28, 2013) ("Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week.").

> (b) The provisions of section 207 of this title shall not apply with respect to –
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.

29 U.S.C. § 213(b)(1); *Fox*, 865 F. Supp. 2d at 264. The exemption applies to those employees who

> (1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a); *Williams,* 2015 WL 305362, at *5.

In this case, the parties do not appear to dispute that Equity is subject to the Secretary of Transportation's jurisdiction or that plaintiff, while employed by Equity, was "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles[.]" *Compare* Dkt. No. 21-8 *with* Dkt. No. 22-18. Instead, their dispute centers upon whether plaintiff was engaged in the transport of property in interstate commerce within the meaning of the motor carrier exemption. *Id.*

Courts have explained that, for the motor carrier exemption to apply,

12

the employer must show that "the activities of the individual [employee] involved interstate travel of a character that was more than de minimus *or* that interstate travel was a 'natural, integral and inseparable part' of the position[] [the employee] held." *Dauphin v. Chestnut Ridge Transp.*, No. 06-CV-2730, 2009 WL 2596636, at *2 (S.D.N.Y. Aug. 20, 2009) (quoting *Morris*, 332 U.S. at 433) (emphasis added, alteration omitted); *accord, Romero v. Flaum Appetizing Corp.*, No. 07-CV-7222, 2011 WL 812157, at *4 (S.D.N.Y. Mar. 1, 2011). When determining whether an employee falls into the exempt class, the "name given to the [employee's] position is not controlling, rather it is the character of the activities involved in the employee's performance of his job that controls." *Walden v. Sanitation Salvage, Corp.*, No. 14-CV-0112, 2015 WL 1433353, at *3 (S.D.N.Y. Mar. 30, 2015) (citing *Pyramid Motor Freight Corp. v. Ispass*, 333 U.S. 695, 707-08 (1947)). "If not all of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, a court must consider 'the character of the activities rather than the proportion of either the employee's time or his activities.'" *Williams*, 2015 WL 305362, at *3 (quoting *Morris*, 332 U.S. at 431).

One way in which interstate travel can be a natural, integral, and inseparable part of an employee's position is when any employee may be required to perform interstate travel, regardless of the actual time spent by

13

employees individually on interstate travel. *Williams*, 2015 WL 305362, at *7. "In the case of drivers, courts often phrase the ultimate issue as whether the employee could *reasonably have expected* to drive in interstate commerce." *Id.* at *8 (emphasis added). When making this determination, a court must make a "fact-specific analysis, including an examination of the method by which the employer assigns the interstate activity to the pertinent class of employees, the nature of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-intrastate employee activities." *Id.* (quotation marks omitted).

Equity argues that interstate travel was an integral part of plaintiff's job because he was likely to travel outside of New York State during the course of his employment. Dkt. No. 22-18 at 13-16. In support of that argument, defendant relies on Linda Wilbur's deposition, at which she testified that the method of assigning routes for drivers was random, and at any time plaintiff could have been assigned an interstate transportation route. Dkt. No. 21-6 at 32-33. Defendant also points to plaintiff's acquisition of a tandem license and the signed employee addendum providing that he may have to travel interstate as further indicia of the likelihood that he would have to travel interstate. *Id.* at 61-62; Dkt. No. 22-8 at 9; Dkt. No. 22-14 at 2. In addition, defendant notes that many of the over-the-road drivers drove to interstate warehouse locations during their

14

standard workdays. Dkt. No. 22-5 at 83-84.

The present record, however, discloses the existence of a genuine dispute regarding whether plaintiff was expected to make trips outside of the State of New York, and whether he ever did. According to Wilbur, plaintiff's responsibilities as a shuttle driver and those of the other over-the-road drivers were fundamentally different. Dkt. No. 21-6 at 19-22. More specifically, she noted that over-the-road drivers "are the drivers that pickup and deliver to the Pepsi satellites [located within and outside New York State]." *Id.* at 20. A shuttle driver, on the other hand, is primarily responsible for shuttling single trailers from the Latham facility to the Exit 24 compound, and then return to the facility with "any dunnage or empty trailers." *Id.* at 22. In addition, reasonable factfinders could differ in opinion, as do the parties, over whether Wilbur's testimony that "everyone" is required to make interstate trips applies only to over-the-road drivers or instead includes shuttle drivers, as well. Dkt. No. 21-6 at 33. Moreover, while plaintiff did receive a tandem license, he obtained it late in his employment, only traveled with a tandem trailer once within New York State, and there is no record that he ever was asked to or actually did travel outside of New York State. Dkt. No. 22-8 at 9; *see also* Dkt. No. 23 at 4. Because the record evidence reveals a genuine dispute of material fact with respect to whether there was any likelihood that plaintiff's job

involved interstate travel, neither party is entitled to summary judgment based upon this particular argument.

Regardless of whether plaintiff was expected to deliver goods outside of New York State as part of his job, the interstate commerce requirement of the motor carrier exemption can be satisfied if interstate travel was a natural, integral, and inseparable part of plaintiff's position, even if his conduct was wholly intrastate, when the delivery of goods actually constitutes "interstate movement of goods." *Bilyou*, 300 F.3d at 224. "Even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Bilyou*, 330 F.3d at 223 (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)); *see Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74 (2d Cir. 2001) (noting in the Carmack Amendment context, which is also governed by the interstate commerce requirements of 49 U.S.C. § 13501, that the nature of a shipment is determined "by reference to the intended final destination of the shipment as that intent existed when the shipment commenced"); 29 C.F.R. § 782.7(b)(1) ("[The motor carrier exemption applies even] where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate

16

commerce.").

Equity generally argues that plaintiff's intrastate deliveries were within the flow of interstate commerce, fulfilling the interstate commerce prong of the motor carrier exemption. Dkt .No. 22-18 at 17. In response to this argument, plaintiff improperly emphasizes the fact that the products being delivered by him, as the shuttle driver, were destined for a warehouse without fulfilling a specific customer order. Dkt. No. 21-6 at 86; Dkt. No. 21-8 at 9; Dkt. No. 25 at 4. In this regard, plaintiff relies on *Baird v. Wagoner Transp. Co.*, 425 F.2d 404 (6th Cir. 1970), Dkt. No. 21-8 at 17-18, a case that has been widely criticized and expressly called into questioned by both the Department of Transportation and the Department of Labor.[7] *See Billings v. Rolling Frito-Lay Sales, LP*, 413 F. Supp. 2d 817, 821 (S.D. Tex. 2006) (citing authorities).

After reviewing the relevant and binding authority governing this matter, I find that the proper inquiry, as suggested above, is the intent of the shipper at the time of shipment. *See Bilyou*, 300 F.3d at 223-24 ("Whether the transportation is of an interstate nature can be determined by reference to the intended final destination of the transportation when that ultimate destination was envisaged at the time the transportation commenced." (quotation marks omitted)). In this case, unlike some of

---

[7]  Both plaintiff and one of the governing regulations, 29 C.F.R. § 782.7, rely heavily upon the Sixth Circuit's decision in *Baird.*

17

those relied on by plaintiff, Equity did not own the goods in question, nor was it contemplated under the Agreement that it would further transport the goods from the warehouses to which they were being shipped to end customers. Dkt. No. 21-6 at 85-86, 128-42. Under the Agreement, Equity was only expected to transport products from its Latham facility to a final destination, which regularly was located outside of New York State. *Id.* at 86; Dkt. No. 22-5 at 83-84; Dkt. No. 22-6 at 30-32. It is not disputed that plaintiff frequently transported trailers from the Latham facility to the Exit 24 compound knowing that the trailers had pre-determined final destinations located outside of New York. Dkt. No. 21-5 at 74-75, 87-88. Plaintiff acknowledges that he knew from reading the bills of lading and speaking to over-the-road drivers where the trailers he transported to the Exit 24 compound were bound, and was aware that some of his trailers were pre-destined for warehouses in New Jersey, New England, and Pennsylvania. *Id.* at 87-88. Though plaintiff may never have personally transported a trailer across state lines, when he relayed filled trailers to the Exit 24 compound, he was essentially "one leg of a route to an out of state destination." *Bilyou*, 300 F.3d at 224. If, as the plaintiff himself suggests, the court examines for "the essential character of the commerce, manifested by the shipper's fixed and persisting transportation intent at the time of shipment," Dkt. No. 21-8 at 13 (quotation marks and alteration

18

omitted), it is clear that plaintiff transported many trailers that were destined for interstate satellite warehouse locations.

In sum, because the record reflects, without contradiction, that plaintiff's intrastate transportation of trailers constituted the first leg of the transportation of goods where the final destinations included locations outside of New York State, defendant has carried its burden of showing that plaintiff was engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation in interstate commerce, and that his position falls into the motor carrier exemption of the FLSA's overtime requirements. Accordingly, no reasonable factfinder could conclude that, while employed at Equity, plaintiff was subject to the overtime provisions of the FLSA.[8]

---

[8] For the same reasons that plaintiff's FLSA claim lacks merit I also conclude that his overtime claim under the NYLL fails because that provision is subject to the same exemption. *See Reiseck*, 591 F.3d at 105 ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA."); *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812, 2015 WL 1966355, at *39 (E.D.N.Y. May 1, 2015) ("The NYLL incorporates and restates the FLSA, such that the analysis of overtime claims under the NYLL is generally the same as under the FLSA." (citing 12 N.Y.C.C.R. § 142-3.2)). Even if I were to disagree and find that plaintiff may nonetheless maintain his NYLL claim, I would conclude that it would be improvident to exercise supplemental jurisdiction over that claim, having dismissed plaintiff's only federal cause of action. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (upholding the district court's dismissal of the plaintiff's NYLL claims where it had determined that "the same standard applied to the FLSA and NYLL claims").

IV. <u>SUMMARY AND CONCLUSION</u>

Because defendant has carried its burden of proving that no reasonable factfinder could conclude that the motor carrier exemption does not apply to the circumstances presented in this action, plaintiff's claim that he is entitled to overtime pay under the FLSA must fail. Accordingly, it is hereby

ORDERED as follows:

(1) Plaintiff's motion for summary judgment (Dkt. No. 21) is DENIED;

(2) Defendant's cross-motion for summary judgment (Dkt. No. 22) is GRANTED; and

(3) The clerk is respectfully directed to enter judgment dismissing plaintiff's complaint in this matter in its entirety.

Dated: October 22, 2015
Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge